UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL DURAND** | **CIVIL ACTION** |
| **VERSUS** | **NO.  10-4132** |
| **BURL CAIN, WARDEN** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.    **Factual Background**

The petitioner, Darrell Durand ("Durand"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 13, 2005, Durand and two co-defendants, Joseph Buchert, Jr., and Todd M. Strickland, were indicted by a grand jury in Jefferson

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Parish for the second degree murder of Ivory Hill.[3]  A third co-defendant, Peter J. Aicklen, was also charged in the second count of the indictment as an accessory after the fact for concealing and aiding Durand, Buchert, and Strickland after the commission of the murder.[4]  Aicklen eventually entered a plea of guilty on May 1, 2006, to accessory after the fact; he was given a two year suspended sentence and placed on two years active probation.[5]

The record reflects that, on August 17, 2005, Durand was arrested for the murder of Ivory Hill.[6]  Durand gave two statements about his involvement to Detective Eddie Klein of the Jefferson Parish Sheriff's Office, which were eventually played during the jury at trial.  Durand also testified at trial.  He relayed that, on his way to a friend's house, he went down Terrace Street and saw Strickland, Buchert (known to Durand as "Jodie"), Aicklen, and another older man sitting and talking outside.  He stayed with them to drink beer and talk.

At some point, a man, later identified as Hill, came down the street on his motorcycle. Aicklen and Buchert knew that Hill sold crack cocaine.  Aicklen and Buchert met Hill on the curb and talked to him.  During that conversation, Hill asked Durand why he was looking at him and if he had a problem.  Hill and Durand exchanged words, and Hill cursed at Durand.  Hill left, but Buchert and Aicklen said he was coming back.  Although Durand wanted to leave before he got back, Hill returned about twenty or thirty minutes later.  He pulled into the driveway, and got off

[3]St. Rec. Vol. 1 of 7, Indictment, 10/13/05; Grand Jury Return, 10/13/05.

[4]*Id.*

[5]St. Rec. Vol. 1 of 7, Waiver of Constitutional Rights Plea of Guilty (Aicklen), 5/1/06; Conditions of Probation (Aicklen), 5/1/06; St. Rec. Vol. 2 of 7, Minute Entry (Aicklen), 10/5/06.

[6]The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Durand*, 963 So.2d 1028, 1031-33 (La. App. 5th Cir. 2007); St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 07-KA-4, pp. 3-6, 6/26/07.

2

of his motorcycle.  Hill told Durand, "I got you now bitch" and swung his helmet at Durand.  Durand

ducked, grabbed Hill around his neck, and they fell to the ground.

Durand admitted that he did choke the victim out of fear.  Durand had hurt his wrists in June

of 2005 when he was installing siding on a friend's house.  He had surgery and was wearing soft

casts at the time.  Because of his injured wrists, Durand did not want to take a chance of hurting

himself.  All he knew to do was to choke Hill.  Durand said that he let Hill go when he stopped

moving.

Durand denied that he smoked crack, and he denied robbing Hill of any crack.  He also

denied taking anything from Hill during the fight.

Durand also denied hitting Hill during the scuffle.  He only had Hill in a choke hold, and he

held him for about a minute.  Although Durand said he did not see anyone hit the victim or what

they were hitting him with, he testified that he could feel someone beating on Hill as he continued

to choke him.  Durand agreed this is how he got blood on his body and on his clothes.

When Durand left, he did not know the victim was dead.  As he went down the street, he saw

Aicklen on his porch.  Aicklen told Durand that he had blood on him, and Durand asked Aicklen if

he could go inside to wash it off.  Aicklen gave Durand a shirt to wear.  While he was at Aicklen's

house, Buchert and Strickland arrived.  Durand and Strickland put clothes in a bag, and the bag was

put in a drain so he would not get caught with it on the way home.  Durand and Strickland split up

and then Durand went home.

Dr. Karen Ross, an expert in forensic pathology, found that Hill's autopsy, performed on

August 16, 2005, revealed the cause of death to have been traumatic asphyxia due to neck

compression, associated with blunt force injuries.  She believed that the neck compression could

3

singularly have caused his death.  She indicated that the blunt force injuries to his head may have contributed to his death by making him more susceptible to being placed in a choke hold or by making him die faster from asphyxia.  She also indicated that the presence of wrist braces may have made it easier to maintain a stronger more damaging choke hold.

She further testified that the neck compression was consistent with someone putting the victim in a choke hold.  Using autopsy photographs, Dr. Ross explained that the bruises and lacerations on Hill's face and head were caused by striking him with an object.  She identified petechia, or little hemorrhages usually associated with cells not getting enough oxygen, around his face and predominately on his neck, where the force was applied.  She also acknowledged that there was hemorrhaging in his neck muscles, his neck organs, and the base of his tongue.  She also found teeth impressions on Hill's tongue.  Based on hemorrhages found underneath the scalp, Dr. Ross concluded that Hill received at least five strikes to the head.

Durand was tried separately before a jury on September 13, 2006, and was found guilty as charged.[7]  At a hearing held on September 15, 2006, the Trial Court denied Durand's motion for post-verdict judgment of acquittal.[8]  That same day, the Trial Court sentenced Durand to serve life in prison without benefit of parole, probation, or suspension of sentence.[9]

On September 16, 2006, Durand's counsel filed a written motion for appeal.[10]  On September 20, 2006, counsel also filed a motion for new trial based on insufficient evidence to overcome the

---

[7]St. Rec. Vol. 2 of 7, Trial Minutes (Durand), 9/13/06; St. Rec. Vol. 3 of 7, Trial Transcript, 9/13/06; Trial Transcript Excerpt, 9/13/06.

[8]St. Rec. Vol. 2 of 7, Sentencing Minutes, 9/15/06; Motion for Post-Verdict Judgment of Acquittal, dated 9/15/06; Trial Court Order, 9/15/06; St. Rec. Vol. 3 of 7, Sentencing Transcript, 9/15/06.

[9]St. Rec. Vol. 2 of 7, Sentencing Minutes, 9/15/06; St. Rec. Vol. 3 of 7, Sentencing Transcript, 9/15/06.

[10]St. Rec. Vol. 2 of 7, Motion for Appeal, 9/16/06.

self-defense theory, insufficient evidence of specific intent to kill, and/or insufficient evidence that the murder occurred during the commission of a robbery.[11]  On September 25, 2006, the Trial Court signed orders granting the motion to appeal and granting the motion for new trial.[12]  Later, after the State filed a motion for clarification, the Trial Court vacated the order granting the motion for new trial on February 12, 2007.[13]

Thereafter, on June 18, 2007, Buchert entered a plea of guilty to the amended charge of accessory after the fact, and his sentencing was deferred.[14]  That same day, Strickland entered a plea of guilty to the amended charge of manslaughter.[15]  He was sentenced to serve seven years in prison at hard labor.[16]

On direct appeal, Durand's counsel raised three assignments of error:[17] (1) the Trial Court erred in denying the motion for post-verdict judgment of acquittal; (2) the Trial Court erred in admitting the gruesome autopsy pictures; and (3) the motion for new trial was granted, but no new trial was scheduled.[18]  The Louisiana Fifth Circuit affirmed Durand's conviction on June 26, 2007.[19]

---

[11]St. Rec. Vol. 2 of 7, Motion for New Trial, 9/20/06.

[12]St. Rec. Vol. 2 of 7, Trial Court Order, 9/25/06; Trial Court Order (2), 9/25/06.

[13]St. Rec. Vol. 2 of 7, Minute Entry, 2/12/07; Motion for Clarification, 2/9/07.

[14]St. Rec. Vol. 2 of 7, Plea Minutes (Buchert), 6/18/07; Waiver of Constitutional Rights Plea of Guilty (Buchert), 6/18/07; St. Rec. Vol. 1 of 7, Indictment, 10/13/05 (handwritten amendment dated 6/18/07).  The Court has been unable to locate in the record provided the minutes of Buchert's sentencing set for September 14, 2007.

[15]St. Rec. Vol. 2 of 7, Plea Minutes (Strickland), 6/18/07; Waiver of Constitutional Rights Plea of Guilty (Strickland), 6/18/07; St. Rec. Vol. 1 of 7, Indictment, 10/13/05 (handwritten amendment dated 6/18/07).

[16]*Id.*

[17]St. Rec. Vol. 3 of 7, Appeal Brief, 07-KA-4, 1/29/07.

[18]The appeal brief was filed prior the Trial Court's order vacating the order that granted the new trial.

[19]*State v. Durand*, 963 So.2d at 1028; St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 07-KA-4, 6/26/07.

The Court resolved that the evidence was sufficient to support the verdict of second degree murder, and therefore there was no error in the denial of the motion for post-verdict judgment of acquittal. The Court also found no error in the admission of the photographs, which it concluded were probative and relevant to the issue of intent to kill and to contradict the self-defense argument. On the final issue, the Court recognized that the Trial Court maintained jurisdiction to correct the record by vacating the order it inadvertently signed to grant the motion for new trial. The Court also noted that the motion for new trial was also untimely filed after the sentence was imposed. Finally, the Court remanded the matter for the Trial Court to provide Durand with notice of the post-conviction delays.

On January 25, 2008, the Louisiana Supreme Court denied without stated reasons the subsequent writ application filed by Durand's counsel.[20] Durand's conviction became final 90 days later, on April 24, 2008, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    State Procedural Background

On December 22, 2008, Durand's counsel filed an application for post-conviction relief with the Trial Court raising six grounds for relief:[21] (1) Counsel failed to question Detective Klein about coercion during the hearing on the motion to suppress; (2) Counsel failed to object to the denial of

---

[20]*State v. Durand*, 973 So.2d 753 (La. 2008); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2007-K-1545, 1/25/08; La. S. Ct. Writ Application, 07-K-1545, 7/23/07 (filed by counsel); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2007-K-1545, 7/23/07 (showing filing made by hand).

[21]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 12/22/08.

the motion to suppress and failed to request to seek writs; (3) Counsel was unprepared for trial and, alternatively, failed to seek a continuance to prepare as demonstrated where counsel (a) failed to submit the State's witnesses to meaningful cross-examination, (b) failed to investigate the autopsy/cause of death and procure a countervailing expert witness, (c) failed to review prejudicial photographic evidence before trial and object to its admission by motion in limine, and (d) failed to subpoena and examine the co-defendants; (4) Counsel failed to request a jury charge on self-defense or object to the lack thereof; (5) Counsel failed to object to improper impeachment by prior inconsistent statements; and (6) Statements and reports that constitute *Brady* material were not turned over to the defense prior to trial.

The Trial Court also recognized that Durand had apparently raised claims pro se in an exhibit attached to the application, which were:[22] (1) Ineffective assistance of counsel in (a) failing to seek funds and hire an independent forensic expert to rebut the coroner's testimony, (b) failure to seek funds and hire a medical expert for trial, (c) failure to object to the prosecutor vouching for the credibility of the State's witnesses, and (d) failure to raise crucial issues on appeal; (2) The prosecutor used more peremptory strikes than allowed by law; (3) the Trial Court gave erroneous jury instructions regarding second degree murder; and (4) insufficient evidence.

After receiving the district attorney's opposition response,[23] the Trial Court dismissed the counsel-filed and pro se-filed ineffective assistance of counsel claims as meritless under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). The Court also denied the *Brady* claim finding it to be meritless. The Court denied relief on the pro se issues of insufficiency of the

---

[22]St. Rec. Vol. 4 of 7, Trial Court Order, 4/21/09.

[23]St. Rec. Vol. 4 of 7, State's Opposition, 4/9/09; Trial Court Order, 1/7/09.

evidence and the prosecutor's use of too many peremptory challenges, finding them procedurally barred under La. Code Crim. P. art. 930.4(A) and (B), respectively.[24]

Counsel thereafter sought review in the Louisiana Fifth Circuit arguing that trial counsel provided ineffective assistance where she was grossly unprepared for trial for the following six reasons derived from the third post-conviction claim raised by counsel in the Trial Court:[25] (1) counsel failed to seek a continuance to prepare for trial; (2) counsel failed to submit the State's witnesses to meaningful cross-examination; (3) counsel failed to investigate the autopsy/cause of death and procure a countervailing expert witness; (4) counsel failed to review prejudicial photographic evidence before trial and object to its admission by motion in limine; (5) counsel failed to subpoena and examine the co-defendants; and (6) counsel failed to request a jury charge on self-defense or object to the lack thereof.

On September 17, 2009, the Louisiana Fifth Circuit denied Durand's application in its reasoned opinion finding no merit to the claims raised and declining to reconsider the admissibility of the photographs under La. Code Crim. P. art. 930.4(A), because it had been fully litigated on appeal.[26] The Louisiana Supreme Court denied without stated reasons the subsequent writ application filed by Durand's counsel.[27]

---

[24]St. Rec. Vol. 4 of 7, Trial Court Order, 4/21/09.

[25]St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 09-KH-467, 6/29/09. This application was timely filed based on the extension granted by the Trial Court. St. Rec. Vol. 4 of 7, Notice of Intent, 5/11/09; Trial Court Order, 5/19/09; Motion for Extension, 5/20/09; Trial Court Order, 5/21/09.

[26]St. Rec. Vol. 7 of 7, 5th Cir. Order, 09-KH-467, 9/17/09.

[27]*State v. Durand*, 46 So.3d 1279 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2009-KP-2238, 10/15/10; La. S. Ct. Writ Application 09-KP-2238, 10/15/09 (delivered by counsel by hand); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2009-KP-2238, 10/15/09 (showing delivery by hand).

III.     **Federal Petition**

On October 27, 2010, counsel filed Durand's federal petition for habeas corpus relief. Durand alleges therein that his trial counsel provided ineffective assistance where she was grossly unprepared for trial for the following reasons:[28] (1) counsel failed to seek a continuance to prepare for trial; (2) counsel failed to submit the State's witnesses to meaningful cross-examination; (3) counsel failed to investigate the autopsy/cause of death and procure a countervailing expert witness; (4) counsel failed to review prejudicial photographic evidence before trial and object to its admission by motion in limine; (5) counsel failed to subpoena and examine the co-defendants; (6) counsel failed to request a jury charge on self-defense or object to the lack thereof; and (7) counsel's errors created a cumulative prejudice.

The State filed a response in opposition to Durand's petition conceding that the petition was timely filed and that all but one of the claims have been exhausted.[29] The State argues that Durand's claims are without merit and relief was properly denied on each claim by the state courts.

IV.     **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] applies to this petition, which was filed by Durand's counsel on October 27, 2010.

---

[28]Rec. Doc. No. 1.

[29]Rec. Doc. No. 9.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)). The State concedes, and the record shows, that Durand's petition was timely filed. The State also argues that Durand's seventh claim, claiming cumulative error by trial counsel, has not been exhausted. Alternatively, the State contends that such a claim fails to present a basis for federal habeas relief.

The Court's review of the record reflects that Durand has not raised an independent claim to the state courts that his trial counsel's errors caused him cumulative prejudice. As such, the claim is presented here for the first time and is not exhausted. As will be discussed later in this Report, however, the State is correct that the claim is meritless. As such, this Court can and will address the claim without requiring exhaustion. 28 U.S.C. § 2254(b)(2).

## V.   <u>Standards of a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VI.   <u>Ineffective Assistance of Counsel</u>

Durand argues that his trial counsel provided him with ineffective assistance. He claims that she was unprepared for trial as demonstrated by several listed errors. Durand raised these arguments on post-conviction review in the state courts. In the last reasoned opinion on the issue, the Louisiana Fifth Circuit found, as did the state trial court, that Durand failed to establish that counsel's performance fell below the standards set forth in *Strickland v. Washington*, 466 U.S. at 668. Addressing each of the specific errors listed by Durand, the Court found that there was no evidence to support a finding of deficient performance and/or prejudice arising from counsel's actions at or in preparation for trial.

The Court resolved that Durand failed to prove that his counsel was unprepared or that she should have sought a continuance of the trial to further prepare, finding at times that Durand's claims were unsupported by the record and were otherwise vague and conclusory. The Court

determined that counsel requested a continuance to allow time to call an orthopedist to testify about his wrist injuries. While the continuance was denied, the doctor did testify at trial. The Court found that Durand failed to identify any potential witness or exculpatory evidence that counsel was not able to uncover prior to trial. The Court did not find that counsel erred in failing to further question the detective regarding coercion of the pretrial statements, in light of the waivers signed and the fact that Durand testified at trial that he gave the statements so he could tell the truth.

The Court also found that counsel adequately and thoroughly cross-examined the coroner about the cause of death and the effect of the blows to the head. The Court also declined to consider counsel's performance with regard to the autopsy pictures, since on appeal the admissibility of the pictures was thoroughly resolved. The Court also noted that counsel's decision to not call the co-defendants as witnesses was sound trial strategy. Finally, the Court resolved that counsel did not err in failing to request a self-defense jury instruction, because the evidence did not support that defense. For these reasons, the Court denied relief on the claims.

The Louisiana Supreme Court also denied relief without providing further reasons. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

As cited by the state appellate court, the standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland*, 466 U.S. at 668.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011).  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of

14

reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694.  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is

> a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. __, 129 S. Ct. 1411, 1413 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S. Ct. at 1419 n.2).

## A.   <u>Failure to Seek a Continuance to Prepare for Trial</u>

Durand argues that counsel should have requested a continuance of the trial based on her unfamiliarity with the case. He argues only that "counsel appeared unprepared to go forward, did not know about key witnesses until the day before trial, and seemed unsure about arguing motions."[31] He suggests that she was "oblivious of the facts surrounding the case."[32]

Durand concedes that trial counsel did ask for a continuance, but only to subpoena a medical witness. Durand contends that the record is not clear that counsel for all defendants received all of the statements in the possession of the State. From this, he suggests that "it is possible" that counsel did not receive all of the statements she needed for trial. Durand claims that he met his trial counsel for the first time on the Friday prior to trial. He speculates that she did not review the autopsy photographs or talk to his orthopedist before the day of trial.

---

[31]Rec. Doc. No. 1, p. 54.

[32]*Id.*

16

Durand further suggests that counsel "showed general confusion" with regard to motions that had been filed by prior appointed counsel. He complains that counsel did not ask enough questions of the detective during the motion to suppress which resulted in the motion being denied. Similarly, Durand appears to argue that, because the trial lasted only a matter of hours, this somehow equates to ineffective assistance.

As resolved by the state courts, a review of the record reflects absolutely no support for Durand's assertions that trial counsel was unprepared or not ready to proceed to trial. The conclusory allegations are based solely on uncertainties and possibilities which post-conviction counsel concedes can not be established by the record and which require proof that has not been obtained outside of the record or pursued from trial counsel through any means.[33] On the record before this Court, as it was before the state courts, Durand's claims are conclusory and speculative.

This is insufficient to support federal habeas relief. *Miller*, 200 F.3d at 282. Furthermore, it is not the province of the federal court on habeas review to conduct a fact-finding mission to cull out non-record support for a petitioner's habeas claims. As noted previously, this Court is limited to the record as it was before the state courts when the merits of the claims were addressed. *Cullen*, 131 S. Ct. at 1398.

The record as it is supports the state courts' findings that counsel was prepared for trial. For example, while counsel may have only met with Durand once shortly before trial, there is ample evidence that she was familiar with the case and facts and had co-defendants statements in her

---

[33]*See* Rec. Doc. No. 1, p. 3, "Applicant's previous filings, if read as a whole, definitely show part of a story. . .";  p. 4, ". . . which knowledge or intent can only be found by questioning Ms. Lacambra, for the record."'; p. 4, "It is unclear from the record whether she had any experience . . .";  p. 5, "At the very least applicant requests an evidentiary hearing, to further investigate and memorialize these claims."

possession prior to trial, and offered to make copies of them for co-defendants' counsel.[34]  She was aware of and pressed to resolve the outstanding pretrial motions filed by prior counsel before trial commenced.[35]  The record does not indicate that counsel was confused as to any facet of the proceeding; she only questioned how the trial court wanted to handle the pending matters.  She knew that the identification had been made by a co-defendant and got the State to concede that it would not use it.[36]  She also knew that the State had not seized anything from Durand, which apparently obviated the need to suppress such evidence.[37]  Finally, counsel moved forward on the motion to suppress Durand's statement.

Although the motion was unsuccessful, the record demonstrates that counsel proceeded in a professional and knowledgable manner.  Contrary to Durand's arguments, she questioned the officer about why two statements were taken and the impetus behind the taking of the second statement.[38]  She also clearly was aware that the co-defendants had also given statements.[39]

As will be shown further from review of the remaining arguments, the record does not at any point demonstrate that counsel was unprepared, required a continuance to prepare, or that she acted outside of reasonable professional performance.  Durand's claims are unsupported and wholly speculative and conclusory.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.

---

[34]*See e.g.*, St. Rec. Vol. 3 of 7, Hearing Transcript, p. 7, 9/11/06.

[35]St. Rec. Vol. 3 of 7, Trial Transcript, p. 7, 9/13/06.

[36]*Id.*, p. 8.

[37]*Id.*

[38]*Id.*, p. 12.

[39]*Id.*, p. 13.

**B.**     <u>**Failure to Submit the State's Witnesses to Meaningful Cross-Examination**</u>

Durand argues that counsel failed to adequately question the State's witnesses to pursue or substantiate any real weakness in the State's case.  Specifically, he again complains that counsel did not question Detective Klein about the coercive nature of the statements.

As with the other conclusory assertions, Durand had failed to point to any particular "real weakness" which counsel failed to pursue with either of the State's witnesses.  He does not allege facts showing that counsel's tactical choice was unsound or that she had a plausible basis to question the witnesses more harshly.  In that regard, decisions about cross-examination are strategic choices that are entitled to substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight").  The Fifth Circuit also has repeatedly held that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

Durand does not demonstrate that his trial was tainted by unfairness as the result of his counsel's cross-examination strategy.  Durand has not alleged facts or otherwise suggest what other line of questioning his defense counsel could have pursued to further undermine the testimony given by either of the State's witnesses.

In this case, trial counsel was faced with a client who confessed twice and testified that he choked Hill during an altercation, and held him around the neck until he stopped moving.  Durand

19

also verified for the officers that he was giving the statements knowingly and willingly, and he further testified at trial that he freely gave the statements.[40]  Durand has not established that there was a "coercive nature" for counsel to reveal through further questioning of the detective.

Without some showing of a deficient performance or resultant prejudice, Durand is not entitled to relief.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, *Strickland*.

### C.    Failure to Investigate the Autopsy/Cause of Death and Procure Expert Witness

Durand alleges that counsel failed to investigate the cause of death and otherwise erred in failing to obtain an expert witness to raise doubt as to the cause of death.  He argues that another expert may have shown that the head trauma caused by Strickland, the co-defendant, was the cause of death.  This he claims would have shown him to be actually innocent.

As an initial matter, Durand again presents no record support for the conclusion that counsel did not investigate the autopsy or the cause of death.  Based on a review of counsel's pointed and cohesive cross-examination of Dr. Ross, the record supports the opposite conclusion that counsel was quite familiar with and prepared to address the autopsy and cause of death opined by Dr. Ross.

Furthermore, counsel's decision not to call an expert to address the victim's cause of death is a matter of trial strategy.  *Montgomery v. Kelly*, No. 06CV150, 2007 WL 2884400, at *9 (N.D. Miss. Sep. 27, 2007).  In light of the circumstances of the case, this was reasonable.

In this case, on both direct examination and cross-examination, Dr. Ross testified that the blunt force trauma to Hill's head could have been a contributing factor to the asphyxia which caused

---

[40]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 19-21, 58, 9/13/06.

20

Hill's death.[41]  She specifically indicated that the head injuries may have made him more susceptible

to the asphyxia and kept more easily in the choke hold.[42]  Nonetheless, whether he was in the choke-

hold and then hit or vice versa, he died because of asphyxia caused by the significant force used to

compress his neck.[43]

 While Durand suggests that trial counsel should have pursued another opinion on the cause

of death, he has not presented any evidence that another opinion or cause of death was medically

plausible.  His claim is merely speculative.  Furthermore, Durand, until now, was not suggesting

actual innocence.  His claim was that he choked Hill in self-defense out of fear that he would be

hurt.

 Obviously, the jury did not find justification for Durand's actions.  The jury heard testimony

that it was Durand who held on to Hill as tight as he could until Hill was no longer moving.  He did

nothing to stop the other person from beating Hill while he continued to choke him.  He left Hill

lifeless on the ground and went home to shower, after discarding his bloody clothes.

 The state courts' finding that counsel did not act unreasonably or prejudicially is not contrary

to the record.  The state courts' decision therefore was not contrary to or an unreasonable application

of *Strickland*.  Durand is not entitled to relief.

 **D.**   **Failure to Review and Object to Prejudicial Photographic Evidence Before Trial**

 Durand argues that his counsel was ineffective for failing to review the autopsy pictures prior

to the day of trial and in failing to object to the pictures prior to trial.  He further suggests that

---

[41]*Id.*, pp. 44, 45.

[42]*Id.*, pp. 44, 46-47.

[43]*Id.*, pp. 44-45, 46, 47.

counsel could have questioned the need for the photographs and established that charts or diagrams could have been used to support the coroner's testimony.  This, he argues, would have provided the trial court with the opportunity to limit the photographs used at trial.

As with the prior claims, there is absolutely no support for the suggestion that counsel did not prepare for trial.  Furthermore, there is no evidence or anything to support Durand's suggesting that the Trial Court would have been more likely to disallow the photographs by pretrial motion versus overruling counsel's objections prior to Dr. Ross's testimony at trial.

Instead, the record indicates that, prior to calling Dr. Ross, the State announced to the Trial Court that Dr. Ross had selected pictures which she needed to reference during her testimony. Durand's counsel did in fact object to the photographs as "gruesome," "vile," "grotesque," and "disgusting."[44]  In doing so, counsel also exhibited specific familiarity with the photographs.  For example, when looking at one photograph, she also exclaimed, "I don't want that one.  There's another one with the open chest cavity that I don't like either."  This comment indicates that counsel was familiar with the photographs in such a manner to identify the characteristics of a photograph other than the one being discussed at that moment.

Counsel also offered the suggestion that the State be limited to talking about the hemorrhaging shown in the pictures.  The Trial Court, and the State, agreed that the photographs, like every other autopsy picture ever taken, were "disgusting."[45]  The Court nevertheless found the pictures to be more probative than prejudicial.[46]

---

[44]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 28-32, 9/13/06.

[45]*Id*., p. 32.

[46]*Id*., p. 31.

Counsel did as Durand suggests she should have done; she objected to the pictures and offered an alternative means of supporting the doctor's testimony.  The Court did not rule in the defense's favor on this.  Counsel's action are not deficient, or prejudicial, simply because he is unsuccessful in his efforts to obtain relief from the court.  *See Martinez v. Dretke*, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, on direct appeal, the Louisiana Fifth Circuit determined, as did the Trial Court, that the photographs were admissible under Louisiana law.  Thus, no matter when counsel objected to those photographs, the objection or motion would have been a losing proposition under Louisiana law.  Durand has not shown that counsel was deficient or that her objection at trial, rather than by pretrial motion, was prejudicial to the defense.

The state courts' finding that counsel did not act unreasonably or prejudicially is not contrary to the record.  The state courts' decision therefore was not contrary to or an unreasonable application of *Strickland*.  Durand is not entitled to relief.

### E.    Failure to Subpoena and Examine the Co-Defendant Strickland

Durand argues that counsel should have subpoenaed the co-defendants to question them at trial.  He suggests that their pre-trial statements to police implicated Strickland in a manner that may have presented an alternate cause of death.  He argues that, because Strickland beat Hill and was the last person with Hill's body after Durand left the scene, this evidence would have presented a different cause of death for the jury to consider.

As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  *Williams v. Cockrell*, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  The question here is did counsel act unreasonably in not obtaining the testimony of Strickland, one of the co-defendants whose trial had been severed from Durand's trial.

As a preliminary matter, in order to meet the *Strickland* standard, Durand must show that his co-defendants' testimony would have been favorable and that Strickland would have testified at trial. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Thus, to establish prejudice, Durand would have to establish a "'reasonable probability' that the uncalled witnesses  would have made [a] difference to the result." *Alexander*, 775 F.2d at  603.

In this case, Durand apparently relies on the pretrial statements to police which the State chose not to use at his trial.  To have effected the verdict, Durand must show that the testimony in those statements would have been favorable to his defense.  He has failed to meet this burden.

In order for the testimony to have made a difference, each co-defendant, especially Strickland and Buchert, would have had to testify about his own involvement in the murder.  At the time, this would have inculpated each of them in the murder for which they had not yet been tried nor had either of them yet entered a plea of guilty.  It is therefore unlikely that Strickland or Buchert would have been willing or available to testify on Durand's behalf or in any way to benefit Durand.

Furthermore, assuming that the co-defendants would have testified consistently with their pretrial statements, there is nothing in those statements that remotely would have supported Durand's defense.  In each of their statements, the co-defendants indicated that Durand indicated that he was going to pull Hill off of his motorcycle, beat him, and steal crack cocaine from him.[47]  According to the co-defendants, Strickland and Durand started out to find Hill to take his drugs.[48]  After Durand fell off of his bike, they returned to Buchert's apartment where they had been.  The co-defendants stated that Durand was the mastermind behind the planned theft of the drugs, including soliciting Buchert to get his pistol-like B.B. gun and calling Hill to return for a potential drug deal.[49]  When Hill returned, Aicklen and Buchert stayed inside of the apartment where Durand and Strickland met Hill.[50]  As Hill pulled up, Durand ran behind him and pulled him off of the motorcycle as planned.[51]  They "tussled" and Durand got Hill in a headlock.[52]  Although Strickland denied being physically involved in the attack, the others indicated that Strickland beat Hill with the

---

[47]St. Rec. Vol. 4 of 7, Strickland's Statement, pp. 6, 7-8, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 11, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, pp. 4, 7, 8/16/05.

[48]St. Rec. Vol. 4 of 7, Strickland's Statement, pp. 7-8, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 11, 8/16/05.

[49]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 9, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, pp. 6, 12, 15, 17, 8/16/05.

[50]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 9, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 19, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, p. 11, 8/16/05.

[51]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 10, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, p. 15, 8/16/05.

[52]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 10, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 21, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, p. 13, 8/16/05.

gun as Durand choked him.[53]  The men fought and eventually Hill just stopped moving.[54]  Durand picked up a piece of crack that had fallen to the ground.[55]  Strickland also told the officers that Durand directed him to move the motorcycle, and the two of them also moved Hill's body off of the driveway into the grass.[56]  After that, Strickland and Durand went to Aicklen's house and told him that Hill was dead.[57]  They smoked the crack and left to throw away Durand's clothes.[58]

It is inconceivable to find that the testimony of the co-defendants could have benefitted Durand at his trial or that a reasonable possibility existed that the verdict of guilty to second degree murder would have been any different if they had testified.  The co-defendants statements made Durand the mastermind behind a pre-planned drug theft and beating of Hill.  The co-defendants identified Durand as the aggressor and the person who choked Hill until he went limp, with only a few blows to the head by Strickland.  They also placed Durand with Strickland as the body and motorcycle were moved.  In fact, Aicklen attested that Durand told him Hill was dead.  Under the circumstances of the case and considering the co-defendant statements, counsel's failure to call, or decision not to call, the co-defendants was well within the realm of reasonable performance and trial strategy.

---

[53]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 10, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, pp. 21, 22, 8/16/05.

[54]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 10, 8/16/05.

[55]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 10, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, pp. 31-32, 8/16/05.

[56]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 11, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, p. 11, 8/16/05; St. Rec. Vol. 4 of 7, Buchert's Statement, p. 14, 8/16/05.

[57]St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 24, 8/16/05.

[58]St. Rec. Vol. 4 of 7, Strickland's Statement, p. 14, 8/16/05; St. Rec. Vol. 4 of 7, Aicklen's Statement, p. 33, 8/16/05.

Durand has not established that counsel was deficient or prejudicial in this regard. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  Durand is not entitled to relief on this claim.

**F.**      **Failure to Request a Jury Charge on Self-Defense or Object to the Lack Thereof**

Durand alleges that counsel was ineffective for failing to request a jury charge on self-defense or in failing to object to the state trial court's failure to give such a charge.  He contends that, under Louisiana law, the trial court was obligated to give the charge once self-defense was raised.

As noted above, in denying relief on this claim, the Louisiana Fifth Circuit resolved that counsel did not err in failing to request a self-defense jury instruction, because the evidence did not support that defense so as to require the Trial Court to give the instruction.  Louisiana law, in relevant part, defines a justifiable homicide as one ". . . committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."  La. Rev. Stat. Ann. § 14:20(A)(1).  However, Louisiana law also provides that a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense, unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.  La. Rev. Stat. Ann. § 14:21.  While there is no requirement that the defendant actually retreat from the confrontation, the possibility of escape is a factor to be considered in determining if the defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger.  *State v. Woodhead*, 866 So.2d 995, 1000 (La. App. 5th Cir. 2004).

The Louisiana Fifth Circuit found that no jury charge was mandated, because the evidence was such that the jurors could not have found self-defense.  According to Durand, after some verbal banter, Hill swung his motorcycle helmet at Durand and missed.  Durand suffered no injury from Hill.  After that, Durand grabbed Hill, placed him in a choke-hold, using his wrist braces as leverage, and did not let go until Hill seemingly passed out.  The Court recalled that, on direct appeal, it found that the evidence established that Hill was outnumbered, and he was beaten in the head while Durand continued to choke him.  The Court resolved that there was no evidence from which the jury could  infer that Durand killed Hill in self-defense.  As such, the Court resolved that counsel was not ineffective for failing to request the self-defense jury instruction.

The state court properly summarized the evidence presented at trial and resolved that the evidence did not support or trigger the state statutory need for a self-defense charge.  Given the deferential standards outlined previously, the state court's decision denying relief on this facet of the ineffective assistance of counsel claims was entirely reasonable in light of the lack of evidence to support the self-defense claim.  *See Washington v. Cain*, No. 04-2539, 2006 WL 3412321, at *4 (W.D. La. Oct. 5, 2006).  There is no reason to believe that the result of the trial might have been different had counsel requested and obtained the jury instruction.

Without such a showing, Durand has not established that counsel was deficient or prejudicial in this regard. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  Durand is not entitled to relief on this claim.

G.      **Counsel's Errors Created a Cumulative Prejudice**

Finally, Durand argues that the errors of counsel when combined created cumulative prejudice at his trial.  After a thorough review of the record, Durand has failed to identify any constitutional error in trial counsel's performance leaving no basis for cumulative error.  *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454, 1461 (5th Cir. 1992) (Meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised).  The claims fails because "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) (citations omitted); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (In refusing to cumulation of meritless claims, the Court stated, "Twenty times zero equals zero.")

For these reasons, Durand has not shown his entitlement to consideration or relief upon the theory of cumulative error arising from counsel's performance.

VII.    **Recommendation**

It is therefore **RECOMMENDED** that Darrell Durand's petition for issuance of a writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[59]

New Orleans, Louisiana, this 15th day of June, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[59]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

30